UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JANET LOWDER, Administrator of the Estate of YUCEFF WADE YOUNG, II, | ) ) ) | Case No.: 1:10 CV 1179 |
| Plaintiff | ) ) | |
| v. | ) ) | JUDGE SOLOMON OLIVER, JR. |
| VILLAGE OF LINNDALE, *et al.*, | ) ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending before the court is Defendant City of Brooklyn's ("City of Brooklyn" or "Defendant") Motion for Judgment on the Pleadings. (ECF No. 7.) For the reasons set forth below, the court grants Defendant's Motion.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Janet Lowder ("Plaintiff"), who is the administrator of the estate of Yuceff Wade Young, II ("Young"), alleges that in the early morning hours of September 19, 2009, Linndale Police Officer Brian Parks observed damage to the vehicle driven by Young. (Compl., ECF No. 1-3, ¶ 7.) Officer Parks decided to initiate a traffic stop and activated the overhead lights on his cruiser to bring Young's vehicle to a stop. (*Id.*, ¶ 8.) Officer Parks approached the driver's side of Young's vehicle and asked for his driver's license. (*Id.*, ¶ 9.) At this point, Officer Parks believed Young was intoxicated due to his glassy eyes, flushed face, and the odor of alcohol, and asked him to exit the vehicle. (*Id.*, ¶ 10.) When Young did not immediately obey, Officer Parks drew and deployed

his taser gun to gain compliance. (*Id*., ¶ 11.) Plaintiff alleges that Officer Parks did not call for back-up assistance. (*Id*., ¶ 12.) After being struck by the taser, Young drove away from Officer Parks and a high-speed chase ensued. (*Id*., ¶ 13.)

Upon witnessing the pursuit, a City of Brooklyn police cruiser in the immediate vicinity joined in and passed the cruiser operated by Linndale Officer Parks. (*Id*., ¶ 14.) Plaintiff alleges that other units in the Brooklyn Police Department joined in the pursuit as it entered into the City of Brooklyn (collectively, "Unnamed City of Brooklyn Police Officers"). (*Id*., ¶ 15.) During the pursuit, all of the vehicles were traveling at high speeds, and Young lost control of his vehicle, crashed, and died as a result of the impact. (*Id*., ¶ 18.) Plaintiff alleges in her Complaint that the pursuit violated policies of both police departments involved. (*Id*., ¶ 16.)

Plaintiff brings this suit against the Village of Linndale, Linndale Officer Brian Parks, the City of Brooklyn, and the Unnamed City of Brooklyn Police Officers. Plaintiff brings the following claims against the City of Brooklyn: (1) 42 U.S.C. § 1983 Claim for a violation of the Fourth Amendment and Fourteenth Amendments (Count V); and (2) State Law Claims (Counts VI, VII).

## II. JUDGMENT ON THE PLEADINGS STANDARD

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "after the pleadings are closed - but early enough not to delay trial." The standard for evaluating a motion for judgment on the pleadings is identical to the standard a court applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001). Under a motion to dismiss standard, the court examines the legal sufficiency of the plaintiff's claim. *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). As the Sixth Circuit noted in *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545,

548 (6th Cir. 2007), the Supreme Court has clarified the law in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), regarding what the plaintiff must plead in order to survive a Rule 12(b)(6) motion.

When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the Complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Additionally, even though a Complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Sixth Circuit has held that a court may consider allegations contained in the Complaint, as well as exhibits attached to or otherwise incorporated in the Complaint, all without converting a Motion to Dismiss to a Motion for Summary Judgment. Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). However, pursuant to Federal Rule of Civil Procedure 12(d), "[i]f on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

### III.  LAW AND ANALYSIS

#### A.  § 1983 Claims Against the City of Brooklyn

The Supreme Court held that a municipality is subject to § 1983 liability only when the violation of the plaintiff's federally protected right is attributable to the enforcement of a municipal policy, practice, or decision of a final municipal policy maker. *Monell v. Dept. Of Social Services*, 436 U.S. 658, 694 (1978).  Plaintiff alleges in Count V of the Complaint that the City of Brooklyn is liable for its "failure to promulgate policies and procedures, as well as to adequately hire, train, supervise, and discipline its police officers in the wanton and reckless engagement of high speed pursuits." (Compl., ¶ 34.)  Defendant argues that Young's constitutional rights were not violated by the City of Brooklyn's policies, procedures, or training practices, and therefore the City cannot be held liable.  (Def.'s Mot. for J.on Pleadings, ECF No. 8, at 4-5.)  Defendant relies on *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986), in which the Supreme Court held there is no *Monnell* municipal liability under § 1983 unless there is an underlying unconstitutional act.  If the Plaintiff cannot show that Young suffered a constitutional injury at the hands of the Unnamed City of Brooklyn Police Officers, the fact that the departmental regulations may have authorized the use of excessive force is immaterial. *Id*.  The Plaintiff asserts in response that it has pled a violation of Young's Fourth and Fourteenth Amendment rights.  Therefore, it is necessary to resolve the threshold question of whether the facts alleged show the Unnamed City of Brooklyn Police Officers' conduct violated Young's constitutional rights under the Fourth and Fourteenth Amendments. *See Scott v. Harris*, 550 U.S. 372, 377 (2007).

1. Fourth Amendment

All claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a person, should be analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). A "seizure" triggering the Fourth Amendment's protections occur when the government, "by means of physical force or show of authority, restrains the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 20 (1969); *see also Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). The Defendant argues that Young was not seized because the Unnamed City of Brooklyn Police Officers did not intentionally terminate his freedom of movement by pursuing him.

The court finds this argument to be well-taken. It is well-settled law that the pursuit of a fleeing suspect, without the use of additional force, does not constitute a seizure under the Fourth Amendment. Most recently, in *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998), the Supreme Court affirmed its holding in *Brower*, 489 U.S. at 595, that police engaging in a high-speed chase following a fleeing suspect with flashing lights and continuing pursuit, does not constitute a seizure under the Fourth Amendment. *See Brower*, 489 U.S. at 595 (The court indicated that a police chase where the suspect unexpectedly loses control of his car and crashes does not amount to an unconstitutional seizure. However, a police roadblock intended to cause the suspect to crash does constitute a seizure.). Other cases comport with this holding. *See California v. Hodari*, 499 U.S. 621, 626 (1991) (An attempted seizure by police pursuit is not a seizure under the Fourth Amendment.); *Galas v. McKee*, 801 F. 2d 200, 203 (6th Cir. 1986) (No seizure occurred because a showing of authority by the police with no physical force does not restrain the liberty of an individual.)

In an effort to allege a constitutional violation, Plaintiff states that Young was seized from the time Officer Parks deployed his taser to the time of his death. (Pl.'s Br. in Opp'n., ECP No. 8, at 5.) Plaintiff further argues that the effects of a taser lasted for several minutes and it is likely that Young was still under the effects of its force when he died. (*Id*.) However, this argument would not implicate the City of Brooklyn or its Officers because it was Linndale Officer Parks who deployed the taser. (Compl., ¶ 11.) The Unnamed City of Brooklyn Police Officers had no part in the use of the taser against Young. Indeed, Plaintiff does not allege the Unnamed City of Brooklyn Police Officers knew Young was tased before the pursuit began. The Complaint alleges that Linndale Officer Parks did not call for back-up, assistance, or obtain authority for the pursuit. (Compl., ¶ 12.) Based on the facts, the Unnamed City of Brooklyn Police Officers would not have known about the tasing through radio dispatch when they joined the pursuit. Because the Unnamed City of Brooklyn Police Officers were not involved with the alleged seizure, Young's Fourth Amendment rights were not violated by the City of Brooklyn or its Officers.

### 2. Fourteenth Amendment

A substantive due process claim challenging the use of force may only exist if neither the Fourth nor Eighth Amendment applies. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Fourth Amendment does not apply because Young was never seized, and the Eighth Amendment is not applicable in this context. Therefore, a use of force claim may be actionable in this case pursuant to the Fourteenth Amendment.

In *Lewis,* 523 U.S. at 833, the defendant police officers were engaged in a high-speed pursuit aimed at apprehending a fleeing motorcyclist, Brian Willard. The chase reached speeds of 100 mph and ended when Willard's motorcycle tipped over on a sharp turn. *Id*. at 837. The patrol car, unable

to stop in time, skidded into Willard who was pronounced dead at the scene. *Id.* The Court held that the chase and eventual death of Willard did not violate his Fourteenth Amendment rights. The court discussed the difficulty of pursuit situations because they demand an officer make an instant judgment that balances his duty to restore and maintain order with his responsibility not to exacerbate disorder. *Id.* at 853. The court held, "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." *Id.* at 854.

Plaintiff never alleges in the Complaint that the Unnamed City of Brooklyn Police Officers intended to harm Young. Rather, Plaintiff claims the City of Brooklyn is liable for its failure to discipline its police officers in the "wanton and reckless engagement" of high-speed pursuits, and the officers were reckless to pursue in violation of the Fourteenth Amendment. (Compl., ¶¶ 14, 34.) Even when the Complaint and facts are construed in the light most favorable to the Plaintiff, there are no allegations that the Unknown City of Brooklyn Police Officers acted with intent to harm Young in such a way that would constitute a deprivation of liberty without due process. Therefore, by not alleging Defendants intended to physically harm Young, Plaintiff has failed to state a claim of violation of the Fourteenth Amendment.

### B. State-Law Tort Claims Against City of Brooklyn

The Plaintiff asserts three state-law causes of action against the City of Brooklyn: (1) willful, wanton, and reckless misconduct; (2) wrongful death; and (3) survivorship. Defendant City of Brooklyn argues that it is immune from tort liability pursuant to Ohio Revised Code § 2744, which grants sovereign immunity to a political subdivision so long as the conduct of its officers do not fall within five narrow exceptions. (Def.'s Mot. for J. on Pleadings, at 10.) Under Ohio law, a three-tier

analysis is used to determine whether a political subdivision is immune from liability. *Cater v. City of Cleveland*, 83 Ohio St. 3d 24, 28 (Ohio, 1998).

First, the general rule of immunity provides that, "a political subdivision is not liable in damages for a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." O.R.C. § 2744.02(A)(1). As conceded by the Plaintiff, the general rule of immunity applies to the City of Brooklyn.

A political subdivision's immunity is not absolute under this doctrine. The second tier of analysis requires consideration of five limited exceptions found in Ohio Revised Code § 2744.02(B). The only exception at issue here is Ohio Revised Code § 2744.02(B)(1), under which a political subdivision is liable for injury or death caused by the "negligent operation" of a motor vehicle by its employee when the employee is within the scope of his or her employment and authority. However, Ohio courts have held that, "decisions concerning whether to pursue a suspect and the manner of pursuit are beyond the scope of the exception for negligent operation of a motor vehicle." *Shalkhauser v. Median*, 772 N.E.2d 129, 134 (Ohio App. 9 Dist., 2002) (affirming summary judgment granting a city sovereign immunity for the injuries of an innocent driver who was struck by the fleeing suspect during a high speed police pursuit); *see also Rahn v. Whitehall*, 574 N.E.2d 567, 569 (Ohio App. 10 Dist., 1989) ("[T]o the extent plaintiff's complaint alleges negligence on the part of the police initially deciding to pursue a suspect, we find no duty on the part of the defendant to refrain from chasing a suspect."). Thus, Plaintiff would need to allege that the Unnamed City of Brooklyn Police Officers were reckless in the operation of their vehicles during pursuit. *Id.*, 574 N.E.2d at 569. Plaintiff does not allege any facts to support such an allegation.

The blanket immunity provided by O.R.C. § 2744.02(A)(1) in connection with government functions therefore applies to the decision by the Unnamed City of Brooklyn Police Officers to

- 8 -

pursue a fleeing suspect as one of their governmental functions to provide police services for the protection and regulation of public roads. *Shalkhauser*, 772 N.E.2d at 134. The officers' actions do not constitute "negligent operation" of a motor vehicle and consequently do not qualify as an exception to sovereign immunity. Accordingly, the court need not evaluate the third tier of the analysis, which would reinstate the City of Brooklyn's immunity in the event that an exception under O.R.C. § 2744.02(B) applied.

### IV. CONCLUSION

For the foregoing reasons, the court hereby grants Defendant City of Brooklyn's Motion for Judgment on the Pleadings (ECF No. 7) in favor of Defendant and against Plaintiff.

IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

March 31, 2011